**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**FIRST MAGNUS FINANCIAL
CORPORATION d/b/a CHARTER
FUNDING, an Arizona corporation,**

      **Plaintiff,**

      v.                                   Case No.  06-2426-JWL

**STAR EQUITY FUNDING, L.L.C.,
et al.,**

      **Defendants.**

_____

**MEMORANDUM AND ORDER**

In this lawsuit plaintiff First Magnus Financial Corporation (FMFC) alleges defendants entered into a mortgage fraud scheme to induce FMFC into funding fraudulent loans.  FMFC asserts a claim against the defendants involved in the alleged scheme for a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d), as well as eleven other pendent state law claims.  This matter is currently before the court on defendant Gary Shartzer's motion to dismiss (doc. #38) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Therein, Mr. Shartzer contends that the court should dismiss FMFC's RICO claim for failure to allege facts sufficient to demonstrate the existence of a criminal association-in-fact enterprise and that the court should then decline to exercise supplemental jurisdiction over FMFC's state law claims. Defendants Susan Shartzer, Star Equity Funding,

L.L.C., William H. Worley, and Jamie Fankhauser have also filed motions to dismiss (docs. #40 & #46) joining in Mr. Shartzer's motion. The court will construe these two motions as ones for judgment on the pleadings pursuant to Rule 12(c) because they were filed after those defendants filed their answers to FMFC's complaint. For the reasons explained below, the court finds that FMFC's complaint adequately alleges the existence of a RICO enterprise and, consequently, the court will not decline to exercise supplemental jurisdiction over FMFC's state law claims. Accordingly, defendants' motions are denied.

## BACKGROUND[1]

FMFC's complaint alleges that defendants entered into a mortgage fraud scheme to induce FMFC into funding fraudulent loans so that defendants could obtain unjustified fees, commissions, and kickbacks from loans that would not have been made but for defendants' fraudulent representations. The alleged scheme worked through the collusion of the following defendants: (1) the mortgage brokers – defendants Star Equity Funding, LLC, Reis Enterprises, Inc. and Brian Lee Eaton d/b/a Olympic Mortgage; (2) the principals of those mortgage brokers – defendants Gary Shartzer and Brian Eaton; (3) loan officers employed by the mortgage brokers and by American Residential – defendants Brian Eaton, Joe Savaglia, Virgie Self, Dana Self, Doug Carrithers, Tommy Reid, John Blair, Barbara

---

[1] Consistent with the well established standard for evaluating a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings, the court accepts as true all well pleaded factual allegations in FMFC's complaint (doc. #1).

2

Holzenthal, Angel X, and Michael Evans; (4) and appraisers hired by the mortgage brokers and their loan officers – defendants Jane Sanson; Term Investment Group, LLC (TIG) by and through its principals and employees, Terrell Ford, Maurice Ragland, Bill Lima, Robert Bundy, Matthew Woods, and Chris Tyler; and Advantage Appraisal Services by and through its employees Aaron L. Jamison and Debra J. McGowan.  FMFC alleges that the mortgage brokers, their principals, the loan officers, the appraisers and, in one case, the borrower, defendant Susan Shartzer, conspired to over-appraise and wrongfully inflate the value of residential properties and, additionally, that the mortgage brokers by and through the loan officers misrepresented borrower information in the mortgage loan applications and other documents in loan packages.  This resulted in FMFC funding inflated loans that were not adequately collateralized while the defendants obtained commissions and fees from the loan proceeds.  FMFC subsequently suffered damages when the loans defaulted.

FMFC further alleges that additional principals of the mortgage brokers reaped the benefit of the fraudulent scheme while intentionally turning a blind eye to the fraudulent activities that they knew or should have known were being perpetrated on FMFC by their respective businesses.  These defendants include additional principals of Star Equity – defendants Jamie Fankhauser and William Worley; additional principals of Reis Enterprises – defendants Justin Cahow and Kelly Gerety; and additional principals of American Residential – defendants Vincent Rinehart, Vereranda Toledo, and David Villarreal.

FMFC alleges the scheme originated at Star Equity with Gary Shartzer; the Star Equity loan officers, most notably Joe Savaglia, Brian Eaton, and Dana Self; and appraisers

Jane Sanson and TIG. As a means of generating revenue, Gary Shartzer directed the Star Equity loan officers to obtain property appraisals which were used to secure loans at pre-determined, overstated values. The Star Equity loan officers, in turn, directed appraisers Jane Sanson and TIG to complete these appraisals at unjustified values. To accomplish this, Jane Sanson and TIG falsified comparables, misrepresented the features of the subject properties, used comparables that were not applicable, and stole the identities of legitimate appraisers and created fictitious appraiser identities to hide their participation in the scheme. Star Equity then directed other Star Equity employees to assemble loan packages, which contained the fraudulent information, and to submit those loan packages to FMFC for funding.

When Star Equity stopped doing business locally, Gary Shartzer continued the scheme by doing business through Reis Enterprises at the previous Star Equity location and using the Star Equity telephone number. He kept the same loan officers, most notably Joe Savaglia and Dana Self. Similar fraudulent appraisals on loans funded by FMFC occurred with respect to property owned by Gary Shartzer and his wife, Susan Shartzer, as well as property owned by Dana Self.

In 2005, the Kansas State Banking Commission investigated Reis Enterprises, including Gary Shartzer and Joe Savaglia, for submitting at least nineteen fraudulent or altered appraisals to lenders. Reis Enterprises' license was revoked and it, Gary Shartzer, and Joe Savaglia were fined. Also in 2005, the Missouri Real Estate Appraisers Commission brought a complaint against Jane Sanson for submitting six fraudulent or altered appraisals

to lenders during the 2000-2001 time period. On May 24, 2005, Ms. Sanson waived her right to a hearing and stipulated to the allegations against her.

After participating in the scheme at Star Equity and Reis Enterprises, key employees and managers of those entities, most notably Brian Eaton and Joe Savaglia, went on to perpetrate the scheme at and through American Residential. There, Brian Eaton and Joe Savaglia continued to direct TIG to create appraisals to support pre-determined and inflated values in order to cause FMFC to make under-collateralized loans. TIG continued to fulfill its role in the scheme by creating fraudulent appraisals.

When Brian Eaton stopped doing business as American Residential, he continued the scheme as Brian Lee Eaton d/b/a Olympic Mortgage. The American Residential branch office in Lenexa, Kansas, became the site of Olympic Mortgage and the American Residential telephone number became the telephone number for Olympic Mortgage. Brian Eaton again directed his loan officers to direct appraisers to create appraisals to support a pre-determined but inflated value. Michael Evans directed Aaron L. Jamison and Debra J. McGowan d/b/a Advantage Appraisal Services to create a fraudulent appraisal, Mr. Jamison and Ms. McGowan obliged, and FMFC made a loan based on the fraudulent appraisal. Brian Lee Eaton d/b/a Olympic Mortgage has been the subject of an investigation by the Kansas State Banking Commission. During some time period, Olympic Mortgage and Advantage Appraisal Services shared an address.

FMFC's complaint then sets forth forty pages of allegations describing the specific details of the various defendants' alleged involvement in nineteen loans. Of the nineteen

loans which are the subject of FMFC's complaint, twelve were originated by Star Equity and its loan officers; Jane Sanson completed the appraisal on nine of them; Brian Eaton and Joe Savaglia were the loan officers on five of them; and Dana Self was the loan officer on one of them. Five of the nineteen loans were originated by American Residential; TIG was the appraiser on all five; Brian Eaton and Joe Savaglia were the loan officers on the majority of them; and Dana Self was the loan officer on the Shartzer loan.

Based on these allegations, FMFC asserts a RICO claim against the mortgage brokers, mortgage broker principals, loan officers, appraisers, and Susan Shartzer based on predicate acts of interstate wire fraud (e.g., fax, phone, and loan proceeds) in violation of 18 U.S.C. § 1343 associated with the nineteen fraudulent loans which spanned a time period of approximately three years, from 2001 through 2004. FMFC also asserts state law claims for breach of contract, breach of contract based on a breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent misrepresentation, fraudulent omission, negligent misrepresentation, professional negligence/negligence, reckless negligence/ negligent supervision, breach of contract against Susan Shartzer, civil conspiracy, and unjust enrichment.

Defendants Gary Shartzer, Star Equity, William Worley, Jamie Fankhauser, and Susan Shartzer now ask the court to dismiss FMFC's RICO claim because, they contend, the complaint fails to adequately allege the existence of a RICO enterprise. Secondly, they contend that the court should then decline to exercise supplemental jurisdiction over FMFC's remaining state law claims and dismiss FMFC's state law claims on that basis.

## LEGAL STANDARD FOR A MOTION TO DISMISS AND
## FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard that applies to a Rule 12(b)(6) motion. *Society of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005). Thus, dismissal or judgment under either standard is appropriate only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief," *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Beedle*, 422 F.3d at 1063. The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

## ANALYSIS

Title 18 U.S.C. § 1962(c) makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In order to state a claim upon which relief

7

can be granted, a civil RICO claim "must allege the defendants (1) participated in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006). Here, defendants seek dismissal based on what they contend is FMFC's failure to allege the second element—a RICO enterprise. A RICO enterprise is statutorily defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has defined a RICO enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *accord United States v. Smith*, 413 F.3d 1253, 1266 (10th Cir. 2005). An enterprise is established by proof of the following three elements: (1) the existence of an ongoing organization with a decision-making framework or mechanism for controlling the group; (2) various associates functioning as a continuing unit; and (3) the enterprise exists separate and apart from the pattern of racketeering activity. *Smith*, 413 F.3d at 1266-67. All three of these issues present questions of fact. *United States v. Sanders*, 928 F.2d 940, 943 (10th Cir. 1991).

**1.      Ongoing Organization With a Decision-Making Framework or Mechanism for Controlling the Group**

Defendants contend that FMFC's allegations, taken as true, may establish the commission of several conspiracies to commit mail and wire fraud, but they do not establish that defendants were organized in a fashion that would enable them to function as a racketeering organization for other purposes, citing *VanDenBroeck v. CommonPoint*

*Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000). The court agrees that *VanDenBroeck* represents a fair enough statement of the law, but disagrees with defendants insofar as their characterization of FMFC's allegations is not accurate. Simply conspiring to commit a fraud is not enough if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes. *See id.* at 699; *see also United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996) (a RICO enterprise requires "some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much" (quotation omitted)). "Most cases . . . require evidence of some sort of 'chain of command' or other evidence of a hierarchy, even a highly limited one." *VanDenBroeck*, 210 F.3d at 700; *see also Rogers*, 89 F.3d at 1337 (RICO enterprise is an ongoing structure of persons organized in a manner amenable to hierarchical or consensual decision-making).

In this case, FMFC has adequately alleged the requisite hierarchy and decision-making structure. FMFC alleges the existence of an association-in-fact enterprise comprised of the defendants previously discussed (mortgage brokers, mortgage broker principals, loan officers, appraisers, and Susan Shartzer) as well as loan processors, underwriters, title companies, and closing agents. FMFC alleges that the scheme originated at Star Equity with Gary Shartzer; Star Equity loan officers, most notably Joe Savaglia, Brian Eaton, and Dana Self; and appraisers Jane Sanson and TIG. Gary Shartzer directed the loan officers to obtain appraisals at pre-determined, inflated values. The loan officers, in turn, directed the appraisers to complete those appraisals. The appraisers completed the appraisals by using altered and falsified comparables, by misrepresenting the features of the subject properties,

9

by using comparables that were not applicable, and by stealing the identities of legitimate appraisers and creating fictitious appraisers to hide their participation in the scheme. Then, Gary Shartzer and the Star Equity loan officers directed other Star Equity employees to assemble loan packages containing fraudulent information and to submit those loan packages to FMFC for funding. The complaint contains similar allegations with respect to the existence of similar organizational structures at Reis Enterprises, American Residential, and Brian Lee Eaton d/b/a Olympic Mortgage. The court agrees that these allegations "demonstrate a coherent and organized enterprise" where the various members' roles were critical to effectuating the scheme. (Compl. (doc. #1), ¶ 66, at 16.) FMFC's complaint sufficiently alleges that the requisite structure and decision-making framework existed within the asserted RICO enterprise.

**2.    Continuing Unit**

The "central feature" of the continuity element is that each member played a role in the organization that is both consistent with the organizational structure and furthered the organization's activities. *Smith*, 413 F.3d at 1267. Again, the court believes that FMFC's complaint sufficiently alleges the requisite continuity within the organization. The twelve Star Equity loans were originated during 2001 and 2002. Mr. Shartzer, many of the same loan officers, and Jane Sanson then continued the scheme at Reis Enterprises through 2004. Key employees and managers of those entities, including Brian Eaton and Joe Savaglia, went on to perpetrate the scheme at American Residential and Olympic Mortgage during the years 2002-2004. At American Residential, the former Star Equity and Reis Enterprises employees

continued to direct TIG, which had performed appraisals on three of the Star Equity loans, to perform appraisals to meet pre-determined but unjustified values. As aptly summarized in FMFC's complaint, "this scheme was exported by Star Equity principals and employees to various other mortgage brokers, though the appraisers and loan officers involved in many of the fraudulent loans remained the same." (Compl. (doc. #1), ¶ 231, at 60.) And, even though the enterprise employed different mortgage broker titles, "the core members of the enterprise remained the same and the basic decision making structure remained the same." (*Id.* ¶ 235, at 62.) *See Smith*, 413 F.3d at 12676 (continuity element may be established even if some individuals left the organization and were replaced by new members at a later date). FMFC's complaint adequately alleges that each member played a role in the organization that was consistent with the organizational structure and furthered the organization's activities.

**3.    Enterprise Separate and Apart from the Racketeering Activity**

The "enterprise" must be more than just a name for the crimes the members allegedly committed. *Smith*, 413 F.3d at 1267. To satisfy this element it does not need to be shown that the organization has some function wholly unrelated to the racketeering activity, but rather that the organization has an existence beyond that necessary merely to commit each of the acts charged as predicate racketeering offenses. *Id.* "[T]his element is satisfied if the evidence shows the organization coordinated the commission of different predicate offenses on an ongoing basis." *Sanders*, 928 F.2d at 944.

Clearly, this element is satisfied by the allegations in FMFC's complaint. The predicate offenses involve numerous instances of alleged wire fraud occurring in 2001, 2002,

2003, and 2004. The alleged RICO enterprise coordinated the commission of each of those different predicate offenses, but it certainly did not exist merely to commit those wire fraud offenses. Rather, its primary function, which was to generate business and fees for the various participants by obtaining allegedly fraudulent loans from FMFC and other lenders, existed quite separate and apart from the acts of wire fraud that seem to have occurred rather incidentally.

In sum, based on the allegations in FMFC's complaint, the court cannot say that it appears beyond a doubt that FMFC can prove no set of facts under which it might be able to establish the existence of a RICO enterprise. Accordingly, defendants have not demonstrated that they are entitled to dismissal of the RICO claim on that basis. Because the court is not dismissing the RICO claim, then, no basis exists for the court to decline to exercise supplemental jurisdiction over FMFC's state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions to dismiss (docs. #38, #40 & #46) are denied.

**IT IS SO ORDERED** this 2nd day of February, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
